JOHN W. HUBER, United States Attorney (#7226)
JOHN K. MANGUM, Assistant United States Attorney (#2072)
111 South Main Street, #1800
Salt Lake City, Utah  84111
Telephone:  (801) 325-3216
john.mangum@usdoj.gov

Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH - CENTRAL DIVISION

| | |
|---|---|
| SOUTHERN UTAH WILDERNESS ALLIANCE,<br><br>    Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF THE INTERIOR, UNITED STATES BUREAU OF LAND MANAGEMENT, and PAUL BRIGGS, in his official capacity as Cedar City Field Office Manager,<br><br>    Defendants. | Civil No. 2:17-cv-01166 JNP-DBP<br><br>**MOTION TO DISMISS FOR MOOTNESS AND UNRIPENESS**<br><br>Honorable Jill N. Parrish<br>Magistrate Judge Dustin B. Pead |

The United States Department of the Interior, Bureau of Land Management, and the manager of its Cedar City Field Office, Paul Briggs (collectively BLM), move to dismiss claims II and III in Plaintiff's opening brief, ECF No. 48, because there is no live case or controversy and the claims are now either moot or unripe for judicial review.[1]

---

[1] Claims II and III in Plaintiff's opening brief are actually the first and second causes of action in their Amended Complaint.  ECF No. 43.  Because Plaintiff's opening brief describes more fully the nature of its causes of action, this memorandum refers to claims II and III in the opening brief in showing that Plaintiff's claims are unripe or moot.  (Claim I in the opening brief simply lays out the standard of review.)

**BACKGROUND**

Plaintiff in its second and third claims in its opening brief alleges that BLM's June 2014 Hamlin Valley Final Decision (2014 Decision) and August 1, 2017 Determination of NEPA Adequacy (DNA) approve certain vegetative treatments for the Indian Peak (chaining and bull hog) and Stateline (bull hog) project areas and that BLM in approving these treatments violated the National Environmental Policy Act (NEPA), 42 U.S.C. §§ 4321 to 4347.  Plaintiff argues that BLM violated NEPA for two reasons.  First, as Plaintiff correctly states, the DNA relies on the 2014 Hamlin Valley Final Environmental Assessment (EA) and Finding of No Significant Impact (FONSI).  However, Plaintiff contends that the EA fails to adequately assess direct and indirect impacts on cultural resources, ecological site types, and visual resources because the EA is a programmatic analysis.  *See* ECF No. 48 at 18-33.  Second, Plaintiff argues that the FONSI improperly relies on future and uncertain mitigation measures, and that some of these measures were not employed before BLM initiated work in the Indian Peak and Stateline project areas. *See id.* at 34-41.

Plaintiff's recitation of the facts is incomplete.  Since the 2014 Decision was issued, BLM has approved and/or completed a number of vegetative treatment projects in the larger Hamlin Valley project area.[2]  Two of these projects are at issue in this case, the Indian Peak project which includes two different treatments, chaining and bull hogging, and the Stateline project, which includes one treatment, bull hogging.  The Indian Peak project and the Stateline

---

[2] In addition to the Indian Peak and Stateline projects, BLM approved and/or completed the Chokecherry (lop and scatter vegetative treatment) and Chokecherry/Spanish George (bull hog) projects in 2015; the Spanish George (chaining) and Spanish George/Atchison Creek (bull hog) projects in 2016; and the Antelope (lop and scatter) project in 2017, none of which were challenged.

2

project were approved through the use of two internal project authorization forms, one for each project and both signed on July 20, 2017, following the procedure described in the EA. *See* HV 028813 (Q20); HV 028819 (Q21); *see also* HV001621 (D5). BLM prepared a single DNA for both projects, and it published the DNA on its ePlanning website on August 1, 2017.[3]  After Plaintiff expressed concerns about the projects in October, BLM delayed initiating any work in an effort to accommodate Plaintiff's interests. When it became apparent that an accommodation was not possible, Plaintiff filed this action and sought injunctive relief from this Court. *See* ECF No. 8. During the pendency of Plaintiff's motion for injunctive relief, BLM continued to stand down on any work until the Court addressed Plaintiff's motion, which the Court denied. Only at that time, nearly four months after publishing the DNA, did BLM commence work. Because of certain mitigation commitments made in the 2014 Decision and EA, BLM can only work during the late fall and early winter of most years (conditions permitting). *See* HV001635-37(describing critical wildlife periods to avoid or minimize treatment work); *see also* HV001827 (#10 describes the most desirable time of year as that time "immediately before the season of the most reliable rainfall and when temperature is favorable for plant establishment").

On December 19, 2017, BLM completed the chaining treatment in the Indian Peak project area. *See* Exhibit A at ¶¶ 3-4 (Briggs Decl.). On February 8, 2018, BLM completed the bull hog treatment in the Stateline project area. *See id.* BLM has not initiated the bull hog

---

[3] The 2017 DNA addressed the three treatments for the two projects. Plaintiff's motion for injunctive relief sought to enjoin only two of the treatments: chaining in the Indian Peak project area and bull hogging in the Stateline project area. As discussed later, these treatments have been completed. The third treatment is a planned 798 acre bull hog application within the lower regions of the Indian Peak project area, which Plaintiff identifies as objectionable in its amended complaint. *See* ECF No. 43 at ¶ 4 (describing the total acreage of the Indian Peak project as 3,219 acres, which is the sum of the chaining (2,421 acres) and bull hog (798 acres) treatments).

treatment in the Indian Peak project area, and BLM has committed not to undertake this work without further NEPA review or analysis and the preparation of a new decision. *See id.* at ¶ 6; *see also* **ePlanning link showing project is no longer in effect**. Consequently, there are no treatments occurring or authorized to occur within the Hamlin Valley project area at this time. As a result, Plaintiff's challenge to the 2014 Decision and 2017 DNA is moot as to the Indian Peak chaining treatment and Stateline bull hog treatment, and unripe as to the Indian Peak bull hog treatment. Because there is no live case or controversy before this Court, Plaintiff's lawsuit should be dismissed.

### PLAINTIFF'S BURDEN TO ESTABLISH SUBJECT MATTER JURISDICTION

Because federal courts are of limited jurisdiction, this court "presume[s] no jurisdiction exists absent a showing of proof by the party asserting federal jurisdiction." *United States ex rel. Precision Co. v. Koch Indus.*, 971 F.2d 548, 551 (10th Cir. 1992) (*Koch Indus.*). "Therefore . . . the party invoking federal jurisdiction in this case, must 'allege in [its] pleading the facts essential to show jurisdiction,' and 'must support [those facts] by competent proof.'" *Koch Indus.,* 971 F.2d at 551 (citations omitted). "Where a party attacks the factual basis for subject matter jurisdiction, the court does not presume the truthfulness of factual allegations in the complaint . . . ." *Radil v. Sanborn W. Camps, Inc.*, 384 F.3d 1220, 1224 (10th Cir. 2004). Instead, "[a] court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts . . . ." *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995).

**ARGUMENT**

I. **PLAINTIFF'S CLAIM AS TO THE INDIAN PEAK BULL HOG TREATMENT IS NOT RIPE FOR JUDICIAL REVIEW.**

Plaintiff's challenge to the Indian Peak bull hog treatment is not ripe for judicial review because there is no final agency action to review at this time. Federal courts' limited jurisdiction prevents them from "from entangling themselves in abstract disagreements over administrative policies," while also "protect[ing] the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *S. Utah Wilderness All. v. Palma*, 707 F.3d 1143, 1158 (10th Cir. 2013) (citations omitted). "In evaluating ripeness the central focus is on whether the case involves uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all." *Id*. When evaluating whether an administrative decision is ripe for review, a court looks to see whether

> both the 'fitness of the issues for judicial decision' and the 'hardship to the parties of withholding court consideration.' In doing so, we may consider: (1) whether the issues in the case are purely legal; (2) whether the agency action involved is "final agency action" within the meaning of the Administrative Procedure Act, 5 U.S.C. § 704; (3) whether the action has or will have a direct and immediate impact upon the plaintiff and (4) whether the resolution of the issues will promote effective enforcement and administration by the agency.

*Id.* (internal citations omitted). A final agency action is a decision that represents "the consummation of the agency's decisionmaking process." *Id.* (citing *Bennett v. Spears,* 520 U.S. 154, 158 (1997)). Here, there is no longer a decision that represents such a consummation of BLM's decisionmaking process because BLM has committed to undertake further NEPA review or analysis and issue a new decision before initiating the Indian Peak bull hog treatment. Therefore, until BLM issues a new decision, Plaintiff's claim as it applies to that specific project is not ripe for review.

5

## II. PLAINTIFF'S SECOND AND THIRD CLAIMS IN ITS OPENING BRIEF ARE MOOT AND SHOULD BE DISMISSED.

Plaintiff's challenge to the remaining aspects of the 2014 Decision and 2017 DNA is moot. There is no live case or controversy since all remaining authorized work in the Indian Peak and Stateline project areas covered by the 2017 DNA has been completed. "Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Ex Parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1868). A court cannot assert subject matter jurisdiction over a moot case. *See, e.g.*, *In re BCD Corp.*, 119 F.3d 852, 856 (10th Cir. 1997). Federal courts do not have "subject matter jurisdiction if a case is moot" as "[m]ootness is a threshold issue because the existence of a live case or controversy is a constitutional prerequisite to federal court jurisdiction." *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1109 (10th Cir. 2010) (internal quotations and citations omitted). Federal courts are further limited from providing declaratory relief if it will not "have some effect in the real world." *Id.* at 1110 (citations omitted). "Thus, the Supreme Court has held that when considering the potential mootness of a claim for declaratory relief, the question is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* at n.12. Therefore, because there is no live case or controversy in the present situation, the matter is moot and this Court does not have jurisdiction to provide any relief with regard to BLM's 2014 Decision and the 2017 DNA.

In addition, any future new projects within the Hamlin Valley project area will not begin until BLM has completed further NEPA review or analysis and a subsequent decision is issued.[4] *See* Briggs Decl. at ¶ 7. This includes the Indian Peak bull hog treatment, as mentioned above. *See id.* at ¶ 6. Therefore, Plaintiff cannot obtain any real-world relief by continuing to litigate whether BLM's 2014 Decision, EA, or FONSI violates NEPA. No relief can be granted to Plaintiff unless and until BLM issues a decision approving a new treatment within the Hamlin Valley project area and Plaintiff successfully challenges that decision. *See S. Utah Wilderness All. v. Interior*, 250 F. Supp.3d 1068, 1087-88 (D. Utah 2017) ("Further, it is entirely uncertain at this stage what form, if any, new APDs will take. In other words, there is now no 'substantial controversy of sufficient immediacy and reality' regarding either the process that created the original APDs or their content," *citing Chihuahuan Grasslands All. v. Kempthorne*, 545 F.3d 884, 891 (10th Cir. 2008) (quoting *Beattie v. United States*, 949 F.2d 1092, 1094 (10th Cir. 1991)); *S. Utah Wilderness All. v. Smith*, 110 F.3d 724, 727 (10th Cir. 1997) ("If an event occurs while a case is pending that heals the injury and only prospective relief has been sought, the case must be dismissed."). Therefore, the matter is moot.

Despite being unable to receive any relief at this time, Plaintiff may argue that this Court should review the 2014 Decision and/or 2017 DNA under one of the four exceptions to the mootness doctrine. A court may find that an action falls within one of the exceptions to the mootness doctrine if: "(1) secondary or 'collateral' injuries survive after resolution of the primary injury; (2) the issue is deemed a wrong capable of repetition yet evading review; (3) the

---

[4] Such NEPA review or analysis may include a DNA or EA depending on the type of treatment proposed and specific area in which it would be applied, and any subsequent decision would be made public and subject to administrative appeal under 43 C.F.R. Part 4 and judicial review.

7

defendant voluntarily ceases an allegedly illegal practice but is free to resume it at any time; or (4) it is a properly certified class action suit." *Riley v. Immigration & Naturalization Serv.*, 310 F.3d 1253, 1257 (10th Cir. 2002) (citations omitted). Given the nature of this action, only the first three exceptions are addressed below.

### A.  The Secondary or Collateral Injury Exception Does Not Apply Here.

The secondary or collateral injury exception does not apply here because there is no "concrete and continuing injury." *Spencer v. Kemna*, 523 U.S. 1, 7-8 (1998). Plaintiff's alleged primary injuries were that the vegetative treatments in the Indian Peak and Stateline project areas would adversely impact their members' ability to engage in "scientific study, recreation, wildlife viewing, hunting and aesthetic appreciation" in the project areas and surrounding lands. ECF No. 43 at 5. To preserve these interests, Plaintiff requested injunctive relief from this Court. *See* ECF No. 43 at 20; *see generally* ECF No. 8. However, this Court denied Plaintiff's request and BLM has since completed the work Plaintiff sought to enjoin. Additionally, the internal project authorization approving the Indian Peak bull hog treatment is no longer considered effective by BLM, and BLM will not initiate this treatment without undertaking further NEPA review or analysis and issuing a new decision. Plaintiff bears the burden of establishing a collateral injury from the now-completed vegetative treatments in the Indian Peak and Stateline project areas, and it cannot do so here. *See Spencer*, 523 U.S. at 8-9. Therefore, the first mootness exception does not apply.

### B. Claims II and III Are Not Capable of Repetition Yet Evading Review.

The "capable of repetition yet evading review" exception to the mootness rule is a "narrow" one "that should be applied in exceptional situations." *Wyoming v. U.S. Dep't of the Interior*, 674 F.3d 1220, 1229 (10th Cir. 2012) (citations and quotations omitted). To establish

such an exceptional situation, Plaintiff must show that: (1) the duration of the challenged action is too short to be fully litigated prior to its cessation or expiration; and (2) there is a reasonable expectation that Plaintiff will be subjected to the same jeopardy again. *Id*. Plaintiff cannot meet either requirement here.

Plaintiff had and will have in the future ample time to challenge any new vegetative treatment projects within the Hamlin Valley project area. As an initial matter, as previously explained, the Hamlin Valley Final Decision was issued in June 2014. The DNA for the treatments at issue in this case was completed on August 1, 2017, and posted on BLM's ePlanning website, and work was scheduled to begin in the late fall/early winter of 2017. During the time between the DNA's posting and the implementation of the projects, Plaintiff brought its case and sought injunctive relief.

Moving forward, BLM commits to providing public notice of any future decisions for the Hamlin Valley project area to ensure that Plaintiff will have "sufficient time for any challenge to be filed" and seek a stay from the Interior Board of Land Appeals (IBLA) "before work begins." Briggs Decl. at ¶ 7. This procedure is clearly laid out in 43 C.F.R. Part 4, and Plaintiff is well aware of it, having appealed dozens of BLM decisions since Plaintiff's founding. If Plaintiff chooses not to pursue administrative review, or the IBLA denies a stay petition, Plaintiff of course may seek judicial redress. Therefore, Plaintiff cannot establish that there will not be sufficient time to litigate any future decisions, nor can it assert a reasonable expectation of being subjected to the same jeopardy. As a result, the exception to the mootness doctrine based on the matter being capable of repetition yet evading review is not present here.

### C. The Voluntary Cessation Exemption Does Not Apply Here Because the Appealed Actions are Completed or No Longer in Effect.

The voluntary cessation exemption "exists to counteract the possibility of a defendant ceasing illegal action long enough to render a lawsuit moot and then resuming the illegal conduct." *Rio Grande Silvery Minnow,* 601 F.3d at 115. The exception does not apply to the Indian Peak chaining and Stateline bull hog treatments because, after the court's denial of Plaintiff's motion for injunctive relief, BLM did not voluntarily further suspend any pending action. And the Indian Peak chaining and Stateline bull hog treatments have been completed.

Plaintiff may argue that the voluntary cessation exception applies to the Indian Peak bull hog treatment because BLM has committed not to initiate that treatment without further NEPA review or analysis and a new decision. However, such an argument would fail. Where, as here, a government agency—as opposed to a private party—has voluntarily ceased the challenged action, courts will not apply the voluntary cessation exception if: "(1) it can be said with assurance that there is no reasonable expectation that the alleged violation will recur, and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Id.* (recognizing that the voluntary cessation exception to the mootness doctrine is not applied nearly as strictly against government agencies as against private parties and holding moot agency action that was voluntarily terminated).

These elements exist here. BLM's commitment to undertake further NEPA review or analysis for the Indian Peak bull hog treatment may lead to BLM imposing new mitigation measures, modifying the treatment area boundary, or not authorizing the treatment. Even if BLM decides to approve the treatment, it will do so only after issuing an appealable decision. Moreover, a presumption of regularity and good faith attaches to government action, including compliance with NEPA. *Rio Grande*, 601 F.3d at 1116 n.15 (citing numerous cases in which government entitled to presumption of good faith); *Conner v. Burford*, 848 F.2d 1441, 1448 (9th

10

Cir. 1988) (stating that courts "assume that government agencies will . . . comply with their NEPA obligations in later stages of development"). Thus, there is no reasonable basis to conclude that any future decision regarding the Indian Peak bull hog treatment or other vegetative treatment projects in Hamlin Valley will suffer from the same alleged flaws about which Plaintiff complains here. Further, the effects of any alleged violation are "eradicated" now that the Indian Peak bull hog treatment will not occur without further decision making. Accordingly, the voluntary cessation exception to the mootness doctrine is inapplicable.

## CONCLUSION

Plaintiff's claims in this lawsuit should be dismissed for two reasons. First, since the Indian Peak bull hog treatment will not go forward without further decision-making, there is no final agency action ripe for judicial review. Second, the completion of the Indian Peak chaining and Stateline bull hog treatments render this matter moot. Any future treatments or projects within the Hamlin Valley project area will be subject to additional NEPA review or analysis and will go forward only if approved in a decision after public notice and an opportunity for administrative review. Therefore, Plaintiff's lawsuit should be dismissed.

DATED this 4th day of April 2018.

        JOHN W. HUBER
        United States Attorney

        /s/ John K. Mangum
        JOHN K. MANGUM
        Assistant United States Attorney

Agency counsel:
Cameron B. Johnson
Office of the Regional Solicitor
U.S. Department of the Interior
125 S. State St. Ste. 6201
Salt Lake City, UT 84138